**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

---

| | |
|---|---|
| ) | |
| SHELBEE HOGAN, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Case No._____ |
| ) | |
| SCHOOL ADMINISTRATIVE UNIT 46, ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendant ) | |
| ) | |

## COMPLAINT

### INTRODUCTION

1. Plaintiff Shelbee Hogan was employed by School Administrative Unit 46 ("SAU 46") for four years as a Building Assistant.

2. In her role, Hogan provided support and supervision to children with Individualized Education Plans, assistance to teachers in the classroom, and worked with children in small groups, among other day-to-day duties and responsibilities.

3. In 2023, Hogan began experiencing significant medical issues that were compounded with post-COVID medical challenges which resulted in Hogan experiencing episodes of extreme dizziness and vomiting.

4. She was diagnosed with cyclic vomiting syndrome in 2024.

5. To manage this condition and its vomiting episodes, Hogan was granted intermittent leave under the Family and Medical Leave Act of 1993 ("FMLA") to allow her to arrive to work late, leave early, or stay home when needed due to a vomiting episode.

1

6.     When Hogan's medical conditions worsened as a result of a new medication she was placed on to treat her obsessive-compulsive disorder, Hogan asked to take FMLA leave for one week to taper off her old medication, and on to a new medication, which was granted.

7.     The day Hogan returned to work from taking FMLA leave, she was told that even with FMLA leave she was unreliable for allegedly arriving to work "late", and was told to either resign or she would be fired.  Hogan opted to resign.

8.     Hogan now seeks to recover compensatory and punitive damages from Defendant SAU 46 for subjecting her to retaliation in violation of the FMLA and RSA 189:73, interference in violation of RSA 189:73, and wrongful termination, as well as any other damages which are recoverable under law.

**PARTIES**

9.     Plaintiff Shelbee Hogan ("Hogan") is an individual who resides at 2 Frasier Way, Apartment E, Tilton, New Hampshire 03276.

10.     Defendant School Administrative Unit 46 ("SAU 46") is a school administrative unit organized under the laws of the State of New Hampshire and is a governmental subdivision of the State of New Hampshire.  It is located at 105 Community Drive Penacook, New Hampshire 03303.  It is comprised of the Andover School District and Merrimack Valley School District.

11.     Hogan was employed by Loudon Elementary School ("Loudon Elementary") located at 7039 School Street, Loudon, New Hampshire 03307.  Loudon Elementary is a part of the Merrimack Valley School District.

**JURISDICTION AND VENUE**

12.    The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Hogan alleges a violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (1993) ("FMLA").

13.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

14.    Venue in the District of New Hampshire is proper pursuant to 28 U.S.C. § 1391(b)(2), because the incidents alleged within this complaint took place in New Hampshire.

**FACTS**

15.    Hogan began her employment with SAU 46 on August 13, 2019.

16.    In or around March 2023, Hogan began experiencing a number of medical problems including chronic nausea, vomiting, and dizziness.

17.    On one occasion, while working at Loudon Elementary, Hogan had to be brought through the school via wheelchair, and transported to the hospital because she was dizzy, unable to see, and profusely vomiting.

18.    After this episode, Hogan woke up almost every morning feeling dizzy and nauseous.  Hogan would experience episodes of profuse vomiting for weeks at a time.

19.    As a result of these serious medical conditions, Hogan's medical provider completed a Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act on June 15, 2023, for Hogan to receive intermittent FMLA leave.

20.    Hogan was only able to put in her absences from work as either "personal" or "sick."

21. When she was utilizing her intermittent FMLA, Hogan would put her time in as "sick," presuming the District would understand this meant it was FMLA leave.

22. Hogan's intermittent FMLA leave expired in or around October 2023.

23. As Hogan was feeling better at the time, she allowed her FMLA to lapse.

24. In December 2023, Hogan contracted the coronavirus ("COVID").

25. After recovering, she developed a number of post-COVID medical issues.

26. Ultimately Hogan was diagnosed with cyclic vomiting syndrome in 2024, a "serious medical condition" which is chronic and requires continuing medical care.

27. In mid-February 2024, Hogan's psychiatrist put Hogan on a new medication for her obsessive-compulsive disorder ("OCD"), and Hogan developed a number of side-effects in relation to this new medication, further exacerbating her nausea and dizziness.

28. OCD is a "serious medical condition" which is chronic and requires continuing medical care.

29. On March 20, 2024, Hogan went to Principal David Bartlett's ("Principal Bartlett") office and let him know that her psychiatrist wanted her to come off the medication as it seemed that Hogan was experiencing an allergic reaction to the medication, not side effects.

30. Her psychiatrist wanted her to slowly taper off her current medication while tapering onto another medication and recommended that she be out of work while managing that transition.

31. Hogan asked Principal Bartlett if she could have a week off and get FMLA leave so that she could focus on switching her medication and feeling better.

32. Principal Bartlett told Hogan that it was fine, and that they could formalize the FMLA leave upon her return.

4

33. Principal Bartlett added that, if Hogan needed longer than a week, then they would reevaluate and go from there.

34. Principal Bartlett reiterated that taking leave was okay, that Hogan need not worry, and that she could deal with the proper forms upon her return.

35. Human Resources Director for SAU 46 Kathleen Boucher ("Boucher") emailed Hogan the appropriate FMLA forms, upon Hogan's request, on March 20, 2024.

36. On March 25, 2024, Principal Bartlett emailed Hogan telling her that she needed to meet with him and Boucher at the SAU office on her anticipated return to work date of March 27, 2024.

37. Hogan asked Principal Bartlett for more information regarding the meeting to which he responded "[a]s for the meeting I don't have any answers for you."

38. At this point, Hogan had not yet turned in her new FMLA form from her doctor, consistent with Principal Bartlett's advice that she need not do so before returning, as her doctor was switching practices and was delayed.

39. Hogan emailed Boucher on March 25, 2024, to provide an update on the status of the FMLA form.

40. Boucher simply responded, "[t]hank you for the update."

41. On March 25, 2024, Hogan's doctor completed the FMLA form, Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act, based on Hogan's chronic nausea and fainting.

42. On March 27, 2024, Hogan went to the SAU and was brought to a room with Bartlett, Boucher, and two women she did not know.

43. Boucher started by telling Hogan that in order for Hogan to come back to work, her psychiatrist had to clear her.

44. Hogan responded that her psychiatrist already said she would do that, so that was fine.

45. Principal Bartlett then noted that this was the best he had seen Hogan look.

46. Hogan responded that it was because she was no longer on the medication.

47. To which Principal Barlett responded "oh the one you took FMLA for."

48. Boucher then told Hogan that "even with the FMLA you are too unreliable" because she would come to work "late" sometimes.

49. Principal Bartlett noted that Hogan would always text him, which he appreciated.

50. Hogan would often text Principal Bartlett when she was unable to come into work because of nausea and/or vomiting, or when she needed to come in late or leave early because of the same.

51. Despite required quarterly evaluations by the principal, Principal Bartlett never provided Hogan with an evaluation, wrote her up, or warned her about this alleged behavior.

52. Hogan was told that she either needed to resign, or they would fire her.

53. Principal Bartlett and Boucher left the room, leaving Hogan with the two women she did not know.

54. Hogan stated that she was confused and did not know what to do.

55. The two women coaxed Hogan into resigning, telling her that it would look better than being fired, and that she would be able to get another job.

56. Hogan kept telling the two women that she did not want to resign.

57.    Hogan had never been in a situation like this before and did not feel as though she had any options.

58.    Hogan asked the two women what to say and they told her what to write.

59.    Hogan wrote a single sentence stating that her last day would be March 27, 2024.

60.    Hogan made multiple mistakes while writing this brief statement because of the stress she was under when writing it.

61.    Hogan later received a letter from Boucher dated March 27, 2024, accepting Hogan's letter of resignation, and informing her that her medical and dental benefits would expire on March 31, 2024.

## COUNT I
### Retaliation in Violation of the Family and Medical Leave Act of 1993 and RSA 189:73

62.    Hogan realleges and incorporates by reference all paragraphs as if fully restated herein.

63.    The FMLA entitles an "eligible employee" to 12 workweeks of leave during a 12-month period because of a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  *See* 29 U.S.C. § 2612(a)(1)(D).

64.    Under the FMLA, an "eligible employee" is one who was employed for at least 12 months prior to the requested leave, who performed at least 1,250 hours of service with that employer during the previously 12 month period, and who is employed by an employer at a worksite with 50 or more employees who are employed within 75 miles of that worksite.  *See* 29 U.S.C. § 2611(2)(A) and (B).

7

65. The State of New Hampshire enacted RSA 189:73 allowing "[a] school district employee who has been employed by the school district for at least 12 months and who has worked at least 900 hours in the previous 12-month period shall be eligible for family and medical leave **under the same terms and conditions as** leave provided to eligible employees under **the federal Family and Medical Leave Act of 1993** …" (emphasis added).

66. "[T]he FMLA makes it unlawful for 'any employer to interfere with, restrain, or deny the exercise of' any FMLA-protected right." *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 722 (1st Cir. 2014) (quoting 29 U.S.C. § 2615(a)(1)).

67. Accordingly, the "FMLA prohibits retaliation against employees who take FMLA leave." *Duryea v. MetroCast Cablevision of New Hampshire, LLC*, No. 15-CV-164-LM, 2017 WL 1450219, at *13 (D.N.H. Apr. 21, 2017) (citing *Pagán-Colón v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 8 (1st Cir. 2012)).

68. To prevail on an FMLA retaliation claim, a plaintiff must establish that "(1) she availed herself of a protected FMLA right; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between her protected conduct and the adverse employment action." *Carrero-Ojeda*, 755 F.3d at 719.

69. Hogan had "serious medical conditions" within the meaning of the FMLA with respect to both her cyclic vomiting syndrome and OCD, and other interrelated medical conditions.

70. Upon information and belief, Hogan was an eligible employee for leave within the meaning of the FMLA.

71. Where Defendant permitted Hogan to take FMLA leave, it is indisputable that she was an "eligible employee" within the meaning of the FMLA, as modified by RSA 189:73.

72. SAU 46 is covered by the FMLA.

8

73.     Hogan provided notice to her employer that she intended to take FMLA leave when, on March 20, 2024, she asked Principal David Bartlett if she could take a week off to taper off a medication that she seemed to be allergic to, and start taking a new medication, and asked if she could get FMLA for that time.

74.     Hogan's employer, through Principal David Bartlett, granted said request.

75.     On her first day returning to work following the one week of granted leave time, and only two days after her doctor signed the FMLA certification form, Hogan had a meeting at SAU 46 where she was told to either resign, or she would be fired because despite her FMLA protections, the SAU said Hogan was too unreliable.

76.     As outlined above, SAU 46 violated the FMLA and RSA 189:73 when it retaliated against Hogan by constructively discharging her immediately upon her return from FMLA leave, because the SAU said Hogan was too unreliable, despite the FMLA protections to which she was entitled.

77.     Hogan seeks all available damages as a consequence of SAU 46's conduct.

**COUNT II**
**FMLA Interference in Violation of RSA 189:73**

78.     Hogan realleges and incorporates by reference all paragraphs as if fully restated herein.

79.     The FMLA entitles an "eligible employee" to 12 workweeks of leave during a 12-month period because of a "serious health condition that makes the employee unable to perform the functions of the position of such employee." *See* 29 U.S.C. § 2612(a)(1)(D).

80.     Under the FMLA an "eligible employee" is one who was employed for at least 12 months prior to the requested leave, who performed at least 1,250 hours of service with that employer during the previously 12-month period, and who is employed by an employer at a

9

worksite with 50 or more employees who are employed within 75 miles of that worksite. *See* 29 U.S.C. § 2611(2)(A) and (B).

81.     However, the State of New Hampshire enacted RSA 189:73 allowing "[a] school district employee who has been employed by the school district for at least 12 months and who has worked at least 900 hours in the previous 12-month period shall be eligible for family and medical leave **under the same terms and conditions as** leave provided to eligible employees under **the federal Family and Medical Leave Act of 1993** …" (emphasis added).

82.     Hogan had "serious medical conditions" within the meaning of the FMLA with respect to both her cyclic vomiting syndrome and OCD and other interrelated medical conditions.

83.     Upon information and belief, Hogan was an eligible employee for leave within the meaning of the FMLA.

84.     Where Defendant permitted Hogan to take FMLA leave, it is indisputable that she was an "eligible employee" within the meaning of the FMLA, as modified by RSA 189:73.

85.     "[T]he FMLA makes it unlawful for 'any employer to interfere with, restrain, or deny the exercise of' any FMLA-protected right." *Carrero-Ojeda*, 755 F.3d at 722 (quoting 29 U.S.C. § 2615(a)(1)).

86.     To prevail on an FMLA interference claim, a plaintiff must establish that (1) she was an eligible employee; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she gave her employer notice of her intention to take FMLA leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Morin v. E. Bearings, Inc.*, No. 20-CV-615-PB, 2020 WL 7406391, at *6 (D.N.H. Dec. 16, 2020) (citing *Carrero–Ojeda*, 755 F.3d at 722 n.8; *Ferreira v. Monadnock Paper Mills, Inc.*, No. 13-cv-425-PB, 2014 WL 768840, at *2 (D.N.H. Feb. 25, 2014)).

10

87.    SAU 46 is covered by the FMLA.

88.    Hogan provided notice to her employer that she intended to take FMLA leave when, on March 20, 2024, she asked Principal David Bartlett if she could take a week off to taper off a medication that she seemed to be allergic to, and start taking a new medication, and asked if she could get FMLA for that time.

89.    Two days after her doctor signed the FMLA certification form, Hogan had a meeting at SAU 46 where she was told to either resign, or she would be fired because, despite the FMLA protections, the SAU said Hogan was too unreliable.

90.    As outlined above, SAU 46 violated RSA 189:73 when it interfered with Hogan's ability to take FMLA leave that she was entitled to by terminating her before she could formally submit the FMLA certification form.

91.    Hogan seeks all available damages as a consequence of SAU 46's conduct.

## COUNT III
### Wrongful Termination

92.    Hogan realleges and incorporates by reference all paragraphs as if fully restated herein.

93.    To demonstrate wrongful termination, first a "plaintiff must show that the defendant was motivated by bad faith, malice, or retaliation in terminating the plaintiff's employment. Second, the plaintiff must demonstrate that he was discharged because he performed an act that public policy would encourage, or refused to do something that public policy would condemn." *Porter v. City of Manchester*, 151 N.H. 30, 38 (N.H. 2004).

94.    Constructive discharge is a method for satisfying the termination element of a wrongful termination claim. *Karch v. Baybank FSB*, 147 N.H. 525, 536 (2002).

11

95.    Accordingly, a plaintiff who has been constructively discharged must show (1) that her termination, or constructive discharge from, employment was motivated by bad faith, retaliation or malice, and (2) that such termination or constructive discharge was due to the employee's performance of an act that public policy would encourage or was due to the employee's refusal to do something that public policy would condemn.  *Id.*  Such public policy may be based on a statutory or non-statutory policy.  *Id.* at 537.

96.    "[A]n employee may show a constructive discharge if she is told 'that she will be fired.'"  *Stratton v. Bentley Univ.*, 113 F.4th 25, 40 (1st Cir. 2024) (citing *Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 97 (1st Cir. 2018)).

97.    *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 521–22 (1st Cir. 2009) provides

> In order to establish constructive discharge, [Plaintiff] must show that conditions were so intolerable that they rendered a seemingly voluntary resignation a termination.  In such cases, [t]he question is not whether working conditions at the facility were difficult or unpleasant, but rather, an employee must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship.  Thus, in order for a resignation to constitute a constructive discharge, it effectively must be void of choice or free will.

98.    As a result of Hogan's serious medical conditions, she took intermittent leave under the FMLA and RSA 189:73, twice.

99.    Public policy encourages eligible employees who suffer from a serious medical condition to take FMLA leave.

100.    As an eligible employee, Hogan has a right to take leave under the FMLA and pursuant to RSA 189:73.

101.    SAU 46 is statutorily required to offer and provide FMLA leave to eligible employees.

12

102. When Hogan took FMLA leave and returned from protected leave she was told that even with the FMLA was "too unreliable" because she would come to work "late" sometimes.

103. Hogan was told to either resign or she would be fired.

104. Hogan chose to resign.

105. Hogan's resignation constitutes constructive discharge as it was effectively "void of choice or free will." *Meuser*, 564 F.3d at 521–22.

106. SAU 46's termination of Hogan was motivated by bad faith and malice, and was done in retaliation for Hogan taking protected leave under the FMLA and RSA 189:73.

107. SAU 46's termination of Hogan's employment, by way of constructive discharge, constituted an adverse employment action against Hogan.

108. SAU 46's stated reason for Hogan's termination was pretextual, as Hogan was told she was too unreliable even with FMLA because she would sometimes come into work "late" on the day that Hogan returned to work after taking leave under the FMLA.

109. SAU 46's termination of Hogan's employment was caused by Hogan taking FMLA leave.

110. Hogan seeks all available damages as a consequence of SAU 46's conduct.

### REQUESTS FOR RELIEF

Wherefore, Hogan respectfully requests that this Court:

A. Order a jury trial on all issues so triable;

B. Enter judgement against School Administrative Unit 46 on all counts;

C. Award Hogan all available damages including for its violations of the FMLA and RSA 189:73;

D.      Award Hogan the reasonable costs of this action, including attorney's fees,

costs, and pre-judgment interest; and

E.      Grant such other and further relief as this Court deems equitable and just.

Respectfully submitted,
SHELBEE HOGAN

By her attorneys,
SHAHEEN & GORDON, P.A.

Date: March 25, 2026                        */s/ Olivia F. Bensinger*
                                            Olivia F. Bensinger (Bar # 274145)
                                            107 Storrs Street
                                            Concord, NH 03302
                                            (603) 225-7262
                                            obensinger@shaheengordon.com

14